May it please the Court, Robert Culp, Assigned Counsel for the Appellant Edmund Munslaug, I was not involved in the trial proceedings. Mr. Munslaug, a native of the tiny country of Suriname in South America, serving a 135-month sentence for cocaine importation conspiracy following a trial and sentencing, he does not understand, let alone consider it to have been fair. He had never been to the United States and is serving in rural Pennsylvania without contact with family and friends. And following two years in a prison awaiting extradition in Trinidad, which the district court found to be psychologically damaging. It's fair to say that, and this was referenced in the proceedings below, that he's, in terms of that psychological damage, he's paranoid. He does not trust courts. He does not trust the government. He doesn't trust fellow prisoners, guards. He doesn't trust assigned counsel. It's in the record. I'm going to go a little bit out of order and touch on a sentencing issue first. And then work my way back to one or more of the fair trial issues I've raised. I realize that on pretty much every issue I've raised, the burden is difficult to satisfy on an appeal. On the sentencing, the point I wanted to focus on is the inconsistency in Judge Nathan's rationale in issuing the sentence. She set forth sort of a comparison of my client and the co-defendant, who as you know was charged with much more serious offenses including abetting terrorism. And she said, well, he got about 135 months for the drug aspect of what he was charged with. He was previously sentenced, and since he pled guilt, even though he was much more of a leader in this. But since he pled guilty, 135 is kind of a fair comparison, because my client went to trial. And- Under the guidelines, there is a calculable benefit by pleading guilty, right? Exactly, exactly. So she went there, and my issue is with the next point. That's where she, forgive me, I meant to have this right here. That's where she goes to my client's two years in Trinidad awaiting extradition. And she says, I do also take into account, consistent with 3553, the harshness of the time he spent in prison in Trinidad pretrial. It does appear to have affected his mental state, and mental well-being has added to a sense of distrust for the process here, and some paranoia that has manifested itself today. He had made a statement to her. I- She took that into account. She did, but she didn't. That's what I'm asking you to remand, to ask her to clarify that. Because she just got done saying, okay, these guys, it's fair to put them at about 135. Then she takes this into account, and then there's no benefit. There's no, I would have expected if she was taking it into account for her to say, well, that's based on this treatment and psychological damage in Trinidad. Instead of 135, I'll go down. She couldn't go down below 120, which was the mandatory minimum, but some benefit from that. And my suggestion here is that she's being inconsistent. And I know that asking the court to remand on the basis of this kind of inconsistency is not your inclination. But- The fact that she considered it doesn't mean that she gave it much weight, or it doesn't mean that she has to articulate what the weight was, right? Well, to my mind, she's giving it weight. She's not saying that, well, that doesn't matter. She's saying, I'm considering it, I'm finding it. This is something that was, I'm sorry? All she said was she was considering it, she gave consideration. Yeah, to my mind, she's doing more than just considering the lawyer's arguments about this, which were presented in some detail about injuries to him in Trinidad and so forth. And she is saying, I'm going to take that into consideration. I do find that this man has been psychologically scarred. That's my phrase. And then- But then she apparently didn't think it merited any reduction in the sentence. Apparently, and that's, I know the government is saying that as well. I think we should find out. I think we should send it back to her and say, you said you were taking this into consideration, and yet there was no impact on the sentence. Are you suggesting she was confused and didn't realize she was doing that? Or are you suggesting that it was unreasonable, substantively unreasonable for her not to give him credit below the sentence of 35 months? I'm saying both. I mean, is there any reason to think she was confused? Yes, because when I read this, and I'm suggesting you should read it the same way, is she starts off at 135, she says, here's this important factor. And I'm finding that, yes, you were psychologically scarred in Trinidad, and then- But I mean, look, judges consider all sorts of things. And they say, I've considered the fact that you're a great father, and you coach Little League, and I've thought about that, and I think that's important. But the judge doesn't then have to say, and that's worth three months, and it's factored into my sentence. We don't require that kind of bean counting by judges, do we? I'm not asking you to bean count, I'm asking you to- Well, you're suggesting there should be itemization, and I'm taking off x months for this, and y months for that. And that's not, as you know, that's not how sentencing's are done. That's, I reject, I mean, I have to disagree that it's itemization, or bean counting, or anything like that. I think this is something very important. She said that the guy is mentally unstable as a result of this, and- Is there anything to suggest that she didn't consider that when she came up with the 135? Here's my number, 135, and these are the things I thought about. If she had come up with 135 after these remarks, I would understand that. But she set this baseline where I think it makes sense to put him on the same level as the co-defendant. What page is that, the transcript? Do you have the page? It's A242 of my appendix, Your Honor. It starts up at the, it's a four page appendix. It starts up towards the top and then goes down to the bottom. I see my time is- How can you get to the gun enhancement? Are you planning to- I'm sorry? The gun enhancement, the two level enhancement for the gun. I decided to pick that aspect of it out, Your Honor. The gun enhancement, if you have a question, I can try to answer it. I was going to move on to something else. The government made the point on the gun enhancement that she did say elsewhere in the sentencing that regardless of that issue, which I think I do have issues with the gun enhancement and I tried to point that out. But she did say elsewhere that she would have given the same sentence regardless of the gun enhancement issue. And the government pointed that out in there. So if I could move on to another, I'm running out of time and probably belabored that prior point too much. On the fair trial points, I do, and again, I recognize the burden here because there was no objection at the trial below. But I do want to emphasize the hearsay slash confrontation issue that I've raised in my brief. Here's a man who went to trial and on the basis of a huge number of tapes. And I've got an issue with the tapes that I've briefed about how they came in, but I'm not going to raise that right now. But you've got two people who, the confidential witnesses, who recorded meeting after meeting, and only one of them testified. And I am suggesting that this is a confrontation clause for the second gentleman. His nickname was Taco. For him not to have testified was a confrontation clause violation under Crawford. Just as sort of an illustrative, here's the second volume of my appendix is these tapes. I tried to put them all in, the ones that were, the transcripts that were admitted. Every time you see- You should have testified about what? You should have had to testify about the statements that were made on tape? He should have been put in the witness chair to be confronted by Mr. Munselag and his attorney. Now, I realize that in the government cites the Burden case, which held interpreting some dicta in the Saget case before that, that even though in these situations, these people do know that they're creating evidence for a case. So in that sense, I would argue under Crawford, it's generating testimony for trial. I do recognize that the Court held in Burden that on the facts of that case, that there is no confrontation clause violation. I'm suggesting here that Burden should be distinguished, because Burden involved one or two statements. This is like, this gentleman, Taco, and I put some quotes into the brief. I realize the government is saying that none of those are for the truth, that they're all part of a drug conspiracy, and that therefore, it's not hearsay. He's an informant, so much of what he's saying is not true by design. Exactly, and I'm trying to take the Court back to the Saget case, which I realize was dicta, and the Burden decision has said that at least on the facts of the Burden case, they said you have to take each case on its own facts, that that's not a confrontation clause violation, the few statements that were introduced in Burden. But this goes on and on and on. This guy, Taco, is talking about all sorts of things, planes and drugs and money. And even if it's all part of a sting, I think he should be required to take the witness stand and to be confronted by the witness. That's my argument there. Thank you. You've saved some time for me. We'll hear from the government. Good morning. May it please the Court. Assistant United States Attorney Michael Lockard for the Appellee of the United States of America. And I'm happy to address the appellant's issues in sort of the reverse order in which they're raised on oral argument. But I'm also happy to take direction from the Court. I know Judge Sullivan, you had expressed interest in one of the sentencing issues. I'm happy to address that first if you would like to go there. Whatever. It's your argument. So I'll just start with the Crawford and Hearsay issue, and there's a simple answer to both of those issues, which Judge Chin and Judge Sullivan, you both noted, those statements were not offered for the truth. For that reason, they're not hearsay. For that reason, they're also not testimonial. And there's the Crawford problem, which this court has held in several cases, recorded statements of an informant are not hearsay. They're offered for a variety of proper non-hearsay purposes, including the effect of those statements on the defendant and his co-conspirators, and providing context for the admissible statements of the defendant and his co-conspirators on those tapes. And for that reason, it's hard to imagine what the point of cross-examination of a confidential source about statements that were made that were not intended to be offered for their truth anyway. C.S. Taco, I think, would acknowledge on cross-examination that he was not, in fact, a Mexican cartel member. I think that makes the point. Moving to the substantive reasonableness of the sentence, I think the appellant has focused on a couple of factors that Judge Nathan considered in the course of formulating the sentence that was imposed. But Judge Nathan considered a lot of other factors as well. And I think that illustrates why the argument on appeal is unsound. If you look at the appendix on pages 241 to 242, Judge Nathan also recites other factors considered, including the seriousness and nature of the offense, which involved high-level government corruption in a South American country. It involved- His father was and is the sitting president of the country of Suriname. Co-conspirator Dino Buteris held himself out as the head of the counterterrorism unit of that country. There was a lot of discussion on the recordings about Mr. Monslaug's and Mr. Buteris's access to corrupt officials at the airport to move huge volumes of cocaine through that airport, both on commercial airlines and on private planes. Judge Nathan noted the constant presence of weapons throughout the course of the negotiations. I wanted to talk with you about that, because it seems like if I do a drug deal at Police Plaza, there are going to be a lot of weapons around, but it's not clear that they're connected to the offense. What about these weapons were connected to this offense? I didn't see in your brief, I didn't see in the appendix any suggestion that these were designed to intimidate or to make people think twice before they double-crossed the organization. So what's the connection between the guns and the drug activity? I think the distinction is between doing a deal at Police Plaza and the chief of police doing a deal at Police Plaza in his office with his service pistol present. And I'll just note a couple of different ways in which weapons were a constant presence throughout the course of these negotiations. There's testimony that Mr. Bouteris himself was always carrying a pistol at all of these meetings. There was the- That's part of his job though, right? At least what he represented himself to be. He was head of some security force. Well, you can have legitimate purposes for carrying a firearm, but when you bring that firearm to a drug negotiation, at that point, under the guidelines, you have to find that it's clearly improbable that it's connected to the offense. I understand the burden is not, I mean, you've established the presence and then it's the defendant's burden, I guess, to establish that it's not connected, right? So I'd like to lay out all the ways in which the guns are a part of the offense and then talk about how that connects to the offense. So there's Mr. Bouteris' personal carrying of a firearm. There's the presence of Mr. Bouteris' armed security. There's the armed security in motorcade that picked confidential sources up at the airport upon their arrival in the country of Suriname. There's the rocket propelled grenade launcher that Mr. Bouteris stored. Is that related to the drug conspiracy, the rocket launcher? We submit absolutely. We submit absolutely. It was stored in a safe along with a brick of cocaine. They were displayed to the confidential sources at the same time. Your argument is that the rocket launcher was designed to protect the kilo in the safe? It's designed to show Mr. Bouteris' and Mr. Mutzlog's capacity, their power, their ability to deal with what they understood to be a high-level Mexican cartel. What's your basis for saying that? I mean, that might be true. It might be just this is a neat gadget that I got at a garage sale and I want to put it in my safe so no one pinches it. It could have been, but I don't, I think the way that... What's the evidence that it was designed to intimidate? Was there testimony that what the informants thought when it was shown? I think the circumstances, the objective readily observable circumstances show what the intended purpose was. And I think it was not displayed in the way that you might say, hey, while you're inspecting this kilo of cocaine, check out my new iPhone, right? This is a rocket propelled grenade launcher stored in a safe with the brick of cocaine. They're displayed to the confidential sources at the same time to demonstrate that Mr. Mutzlog and Mr. Bouteris can actually carry out the drug deal that they purport to be able to carry it out with the confidential sources. There's the circumstance that they believe they're dealing with a high-level Mexican cartel. There's been discussion about whether Mr. Bouteris can supply weapons to the cartel as well as to another criminal organization. There's been discussion about whether they can protect these kilos as they go through the airport. There's been discussions about competitors. And when you put all that together, I think the clear inference is Mr. Bouteris is saying, I'm a powerful person in Suriname. I'm the head of the counterterrorism unit. I have rocket propelled grenades. I have kilos of cocaine that I'm not afraid to store in a safe in my home office. We are going to do this deal with you, and we are powerful, reliable partners. And we think that those circumstances are clearly evident from the evidence. And Judge Nathan then said she would have done it anyway? And then that's correct. Judge Nathan found that it applied and then also stated that she would have imposed the same sentence regardless. Okay. So unless the panel has any other questions, the government's happy to rest on that argument. Thank you. We'll hear the rebuttal. Very briefly back on the confrontation clause issue. It's interesting to note that the jury was never told that all of these statements from this gentleman, Taco, they were never told, oh, those are just for the input. They're not for the truth of the matter asserted. There was no limiting instruction given? Correct. No instruction to the jury. This is how you should view these. Was one? I don't believe so, Your Honor. There's no objection. It's a plain error. Do you think it was necessary? Do you think the jury was laboring under the misimpression that Taco was, in fact, actually a Mexican cartel member? No. They understood that this was a thing. No. I think if that's the theory of admissibility, and, of course, these were not co-conspirator statements because he's cooperating with the government also. So I think if that's the theory of admissibility, I'm just saying the jury was never told that, that it's for the impact. On the sentencing issues that you were just discussing, I just wanted to point out that the government's own witness said that sometimes it's called rocket launch or sometimes it's called grenade launch, or I'm a little confused myself, but it says it had nothing to do with this drug deal. I quote that in my brief at page 49. Well, the judge focused more on the guns than everybody around. I think the judge was focused on the security detail. You're right. And the government says, well, the government's argument, as I understood their brief, was, well, it's foreseeable because those are co-conspirators. And I don't know that they're co-conspirators. I think they're the people who follow him around and that they're armed. And I think it is a very questionable application of the gun enhancement, in my view. But I do have to say the government is right. The judge did say that it didn't matter. I can't run away from that. I mean, I try to explain in my reply brief that it's not a very detailed explanation, as the Supreme Court had been talking about when you get these cases where the judge says, would have given you the same sentence. But I have to acknowledge that. I still ask the court to consider remanding for clarification for resentence and also outright vacation of the judgment based on the unfair trial. Thank you very much.